UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| PAUL B.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-cv-00193-KMB-TWP |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Paul B. applied for disability insurance benefits from the Social Security Administration ("SSA") on December 29, 2016, alleging an onset date of November 9, 2016. [Dkt. 5-3 at 3.] His application was initially denied on April 24, 2017, [dkt. 5-3 at 15-16], as well as upon reconsideration on August 9, 2017, [dkt. 5-3 at 35]. Paul appeared at a hearing before Administrative Law Judge ("ALJ") Anne Shaughnessy on May 28, 2019. [Dkt. 5-2 at 55.] ALJ Shaughnessy issued a decision on July 15, 2019, concluding that Paul was not entitled to receive disability benefits. [Dkt. 5-3 at 53.] The Appeals Council granted Paul's request for review and remanded to the ALJ on April 15, 2020. [Dkt. 5-3 at 61.]

Paul's first remand hearing was held before ALJ Shaughnessy on July 9, 2020, [dkt. 5-2 at 112], after which ALJ Shaughnessy issued a second unfavorable decision on August 26, 2020, finding that Paul was not entitled to receive disability benefits, [dkt. 5-3 at 80]. The Appeals

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

Council again granted Paul's request for review and remanded to a new ALJ on January 4, 2021. [Dkt. 5-3 at 87-89.]

Paul's second remand hearing was held before ALJ David Read on April 23, 2021. [Dkt. 5-2 at 78.] On May 4, 2021, ALJ Read issued a third unfavorable decision, finding that Paul was not entitled to receive disability insurance benefits. [Dkt. 5-2 at 30.] The Appeals Council found no basis for changing ALJ Read's decision on October 15, 2021. [Dkt. 5-2 at 2.] On December 16, 2021, Paul timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision. [Dkt. 1.]

## I.  STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's

conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).  "[E]ven under this deferential standard of review, an ALJ must provide a logical bridge between the evidence and his conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotation marks and citation omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).  The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner] . . . ; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citation omitted).  "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*.  The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work, and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).  The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

3

## II.   BACKGROUND

Paul was born in 1970 and was 45 years old at the alleged onset of his disability in 2016. [Dkt. 5-5 at 2.]  Paul has a high school education and additional training as a mechanic and pharmacy technician.  [Dkt. 5-6 at 7.]  He previously worked as an auto mechanic, home attendant, security guard, small engine mechanic, farm equipment mechanic, apartment maintenance worker, and parts salesperson.  [Dkt. 5-2 at 28-29.][2]

ALJ Read followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Paul was not disabled.  [Dkt. 5-2 at 30.]  Specifically, the ALJ found as follows:

- At Step One, Paul had engaged in substantial gainful activity[3] since November 9, 2016, the alleged onset date.  However, Paul did not engage in substantial gainful activity throughout the entire period at issue, and the work potentially constituted an unsuccessful work attempt, so the ALJ proceeded with the sequential evaluation.  [Dkt. 5-2 at 14.]

- At Step Two, Paul had the following severe impairments: obesity; chronic respiratory disorder; ischemic heart disease with aortic valve replacement; vascular insult to the brain; neurocognitive disorder; depressive, bipolar, and related disorders; and anxiety and obsessive-compulsive disorders.  [Dkt. 5-2 at 14.]

- At Step Three, Paul did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [Dkt. 5-2 at 16.]

- At Step Three but before Step Four, Paul had the RFC "to perform light work as defined in 20 CFR 404.1567(b).  In addition, [Paul] can frequently handle and finger with his right hand.  He can occasionally climb ramps and stairs.  [Paul] can never climb ladders, ropes, or scaffolds.  He can frequently balance, kneel, stoop, crouch, or crawl.  [Paul] cannot work at unprotected heights.  He can tolerate occasional concentrated exposure to dust, odors, fumes, and other cardiopulmonary irritants.  [Paul] is able to perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work).  He can

---

[2] The relevant evidence of record is amply set forth in the Parties' briefs and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

    occasionally interact with the public, coworkers, and supervisors. [Paul] can tolerate occasional changes in task demands and/or work routine." [Dkt. 5-2 at 20-21.]

- At Step Four, relying on the testimony of a vocational expert ("VE") and considering Paul's RFC, Paul was not able to perform any past relevant work. [Dkt. 5-2 at 28.]

- At Step Five, relying on the VE's testimony and considering Paul's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision in representative occupations such as marker, routing clerk, and collator operator. [Dkt. 5-2 at 30.]

### III.    DISCUSSION

Paul makes four assertions of error regarding ALJ Read's decision: (1) the ALJ erred at Step Five in finding that Paul could perform light work because the probationary period for the representative occupations requires more than occasional interaction with supervisors; (2) the ALJ erred in determining the RFC by failing to fully evaluate the medical findings of Dr. Yamato, and proffer objective findings to the VE; (3) the ALJ erred in his evaluation of Paul's former supervisor; and (4) the ALJ erred in his evaluation of Paul's ability to remain on task. The Court will address the issues as necessary to resolve the appeal, beginning with an issue that is dispositive.

#### A.    Evidence of Borderline Manual Dexterity

Paul claims that the ALJ did not fully evaluate the medical findings from Dr. Yamato's neuropsychological evaluation. [Dkt. 13 at 15.] He asserts that Dr. Yamato performed extensive sensory motor testing and found that "manual dexterity was borderline bilaterally. Grip strength was impaired for right dominant hand and borderline for left dominant hand." [Dkt. 13 at 15.] According to Paul, the ALJ provided no discussion on the issue of bilateral hand use and provided a limitation only for frequent handling and fingering with the right hand, but the ALJ does not discuss the left hand. [Dkt. 13 at 15.] Notably, Paul points out that the VE testified at the hearing that there would be no jobs available within the ALJ's hypotheticals if an individual had borderline manual dexterity. [Dkt. 13 at 16.]

5

In response, the Commissioner contends that while Dr. Yamato noted borderline manual dexterity, impaired grip strength in his right hand, and borderline grip strength in his left hand, Dr. Yamato did not include any manipulative restrictions in her opinion. [Dkt. 15 at 10.] Further, the Commissioner claims that the state agency physician, Dr. Everetts, reviewed Dr. Yamato's findings regarding Paul's manipulative limitations and issued an opinion consistent with the ALJ's RFC. [Dkt. 15 at 10.] Specifically, the Commissioner argues that Dr. Everetts reviewed the record, including Dr. Yamato's findings, and found that Paul's only manipulative limitation was fingering with his right hand. [Dkt. 15 at 10.] The Commissioner also asserts that no doctor opined that Paul required greater manipulative limitations. [Dkt. 15 at 10.][4]

While an ALJ need not consider every piece of evidence in his decision, "he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (concluding that an ALJ may not consider only evidence that supports his conclusion while disregarding evidence that undermines it). If the ALJ does not "develop a full and fair record," the court cannot uphold the decision because the ALJ has failed to fulfill his basic obligation of building "an accurate and logical bridge between the evidence and the result." *Beardsley*, 758 F.3d. at 837.

Here, the ALJ failed to confront evidence that Paul had borderline manual dexterity and explain why such evidence does not support the need for greater limitations with respect to handling and fingering. Dr. Yamato performed a neuropsychological exam of Paul in March of 2017 and found "[m]anual dexterity was borderline bilaterally. Grip strength was impaired for right dominant hand and borderline for left dominant hand." [R. 5-7 at 203.] As Paul points out,

---

[4] Paul did not file a reply brief.

6

the ALJ did not address Dr. Yamato's finding of borderline manual dexterity or provide any discussion of bilateral manual dexterity/grip limitations in his decision. While the Commissioner correctly asserts that Dr. Yamato did not expressly include any manipulative restrictions in her opinion, the VE indicated during the hearing that borderline manual dexterity—in combination with the other limitations included in the ALJ's hypotheticals—would prevent an individual from sustaining full-time employment:

> Q: If we took the [ALJ's] first or third hypothetical and said that that individual's manual dexterity is borderline, is that individual going to be able to sustain any type of full-time competitive employment?
>
> A: Well, I immediately think of when you say borderline it's probably only, only on an occasional basis that they would be able to perform, you know, using their hands. And there are some jobs that only require occasional handling and fingering, but in consideration of the other restrictions posed there would be no jobs.

[Dkt. 5-2 at 108.] Because the ALJ did not address Dr. Yamato's finding of borderline manual dexterity and explain if or how Paul would be capable of employment in light of the VE's testimony that an individual with borderline manual dexterity would not be able to sustain full-time work, the ALJ has failed to build a logical bridge between the evidence and his conclusion.[5] *See Jarnutowski*, 48 F.4th at 773.

Moreover, the Commissioner's argument that the ALJ's decision is supported by substantial evidence because Dr. Everetts reviewed the entire record, including Dr. Yamato's findings, and issued an opinion consistent with the ALJ's opinion is not persuasive. The Court must determine

---

[5] The ALJ did note that the VE's "opinion regarding the kinds of jobs that would accommodate an individual who can use a certain hand in specific ways for a certain amount of time . . . is not consistent with the Dictionary of Occupational Titles (DOT) or its companion publication, the Selected Characteristics of Occupations (SCO)." But the ALJ does not explain *how* the VE's opinion is inconsistent with the DOT or SCO, and it is not clear that this note is in reference to the VE's testimony that there would be no jobs available for a person with borderline manual dexterity—nor does the Commissioner make this argument in her brief.

whether the ALJ sufficiently considered evidence contrary to his conclusion—not whether a state agency physician considered such evidence. And here, the ALJ did not sufficiently address medical evidence tending to show that Paul is not able to work and explain why it was rejected. Accordingly, the Court finds that remand is required.

### B.     Other Arguments

Having found that remand is necessary for the reasons detailed above, the Court declines to address Paul's remaining arguments.

### IV.     CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the Commissioner's decision denying Paul benefits from the alleged onset date through the date of the ALJ's decision and **REMANDS** this case to the Social Security Administration. Final judgment shall issue accordingly.

**SO ORDERED.**

Date: 3/1/2023

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email